# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

WILSON C.,[1]                          :    Case No. 3:20-cv-00457
                                       :
      Plaintiff,                      :    Magistrate Judge Caroline H. Gentry
                                       :    (by full consent of the parties)
vs.                                    :
                                       :
COMMISSIONER OF THE SOCIAL             :
SECURITY ADMINISTRATION,               :
                                       :
      Defendant.                      :

---

## DECISION AND ORDER

---

## I.    INTRODUCTION

Plaintiff filed an application for Supplemental Security Income (SSI) on October 17, 2017. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Statement of Errors (Doc. 13), the Commissioner's Memorandum in Opposition (Doc. 16), Plaintiff's Reply (Doc. 17), and the administrative record (Doc. 10).

## II.     BACKGROUND

Plaintiff asserts that he has been under a disability since the SSI application date of October 17, 2017. At that time, he was forty-three years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). Plaintiff has "a high school education and above." *See* 20 C.F.R. § 416.964(b)(4).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 10-2, PageID 55-67), Plaintiff's Statement of Errors (Doc. 13), the Commissioner's Memorandum in Opposition (Doc. 16), and Plaintiff's Reply (Doc. 17). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III.    STANDARD OF REVIEW

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ

are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. FACTS

### A. The ALJ's Findings of Fact

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since October 17, 2017, the SSI application date. |
| Step 2: | He has the severe impairments of "degenerative disc disease of the lumbar spine, osteoarthritis right knee status-post arthroscopy, schizoaffective disorder, cannabis use disorder, and adjustment disorder with mixed anxiety and depression." |
| Step 3: | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 CFR § 416.967(b) subject to the following limitations: "[H]e can never climb ladders, ropes or scaffolds. He can frequently climb ramps and stairs and balance. He can occasionally stoop, kneel, crouch and crawl. He is limited to occasional foot controls with the right lower extremity. He can never be exposed to hazards such as moving mechanical parts or unprotected heights. He is limited to being able to understand, remember and carry out work that consists of simple and routine tasks. He is limited to a work environment free of fast |

4

paced or timed, piece-rate production work, he would be able to meet end of day goals. He is limited to no more than simple workplace changes. He can never interact with the public. He can occasionally interact with supervisors and co-workers, with no tandem tasks or teamwork where one production step is dependent on a prior step."

He has no past relevant work.

Step 5:    Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

(Doc. 10-2, PageID 57-66.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 66-67.)

### B.    Dr. Ramakrishna Gollamudi, M.D.

Treating psychiatrist Dr. Ramakrishna Gollamudi completed a Mental Impairment Questionnaire in August 2019. (Doc. 10-8, PageID 676-79.) He stated that he had seen Plaintiff one time per month since November 2017. (*Id.* at PageID 676.) Dr. Gollamudi listed diagnoses of a schizoaffective disorder, bipolar type, and a cannabis use disorder. (*Id.*) He identified the following signs and symptoms: poor memory, sleep disturbance, mood disturbances, emotional lability, delusions or hallucinations, substance dependence, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, paranoia or inappropriate suspiciousness, difficulty thinking or concentrating, social withdrawal or isolation, and manic syndrome. (*Id.*)

In response to a question requesting clinical findings that demonstrate the severity of Plaintiff's mental impairment and symptoms, Dr. Gollamudi stated that Plaintiff had exhibited delusions, mood swings, and paranoia. (Doc. 10-8, PageID 677.) He stated that

Plaintiff needed two anti-psychotic medications to control his symptoms. (*Id.*) Dr. Gollamudi opined that Plaintiff is at baseline, that his condition has lasted for at least twelve consecutive months, and that his condition is chronic. (*Id.*)

Dr. Gollamudi opined that Plaintiff's mental impairments or treatment would likely cause him to be absent from work more than three times per month. (Doc. 10-8, at PageID 678.) He indicated that Plaintiff would have marked functional limitations in the following abilities: maintaining social functioning; completing a normal workday and work week; accepting instructions and responding appropriately to criticism from supervisors; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; and responding appropriately to changes in the work setting. (*Id.* at PageID 678-79.) He indicated moderate functional limitations in the following abilities: activities of daily living, the ability to remember locations and work-like procedures, the ability to understand and remember very short and simple instructions, the ability to understand and remember detailed instructions, the ability to carry out very detailed instructions, the ability to make simple work-related decisions, the ability to interact appropriately with the general public, the ability to ask simple questions or request assistance, and the ability to be aware of normal hazards and take appropriate precautions. (*Id.*)

The ALJ concluded that Dr. Gollamudi's opinion was unpersuasive:

Dr. Gollamudi failed to provide any context or reference to treatment notes to support any of these statements. Further, these limitations are not supported by Dr. Gollamudi's own treatment notes. In a mental status examinations conducted the same day (August 12, 2019) as Dr. Gollamudi completed the mental impairment questionnaire and a subsequent mental

6

status examination, Dr. Gollamudi noted [Plaintiff] was oriented to person, place, time and situation; there were no signs of hyperactive or attentional difficulties[;] he was cooperative with good eye contact; his psychomotor activity was normal; [Plaintiff's] speech rate and rhythm was normal; his thought process was logical; there were no hallucinations; he was attentive with no gross behavioral abnormalities; his insight was normal and his judgment was good; his recent and remote memory was good and his intelligence was estimated to be above average (22F/2, 6). While these examinations included subjective complaints from [Plaintiff] such as "not doing well", 'feeling anxious and depressed", "having problems with sleep", "having nightmares", "has been paranoid", [sic] [Plaintiff] also denied mood swings or anger, manic episodes, auditory and visual hallucinations, and suicidal or homicidal thoughts (22F). Therefore, this opinion is not consistent with or supported by the objective evidence. As such, the undersigned finds this opinion unpersuasive.

(Doc. 10-2 at PageID 64.)

### C.    Dr. Lauren J. Feria, Psy.D.

Consultative psychologist Dr. Lauren Feria examined Plaintiff and issued a report. (Doc. 10-7, PageID 627-34.) She diagnosed Plaintiff with Unspecified Schizophrenia Spectrum and Other Psychotic Disorder (DSM-V, F29) and Unspecified Cannabis-Related Disorder, in early remission (DSM-V, F12.99). (*Id*. at PageID 633.)

When asked to describe his disability, Plaintiff stated: "I need help for my head … I be hearing voices. I been hearing electricity … the government be trying to get people to sell organs." (Doc. 10-7, PageID 628.) He indicated that he is "withdrawn, has problems with attention and concentration, has poor sleep and low energy, and has problems with anger (i.e., punching, hitting and 'shooting')." (*Id*. at PageID 630.) Dr. Feria described her observations of Plaintiff's symptoms as follows:

Although not forthright about his mental illness, [Plaintiff] alluded to common symptoms of schizophrenia spectrum disorder including auditory

> hallucinations .... He also expressed delusional thoughts several times throughout the interview, for example, that the government is "trying to get people to sell organs" and believing that the water provided during the interview was tainted. He exhibited odd behaviors in the interview, for example he refused to take off his sunglasses stating, "my eyes are the gateway to my soul. I'm not taking these protectors off," and he wore a hooded jacket despite the 90-degree temperature outside on this date. He evidenced a blunted affect in the interview.

(*Id.*)

Plaintiff reported that he has received psychiatric treatment and counseling. (Doc. 10-7, PageID 630.) He is prescribed Olanzapine and Trazadone. (*Id.* at PageID 628.) He admitted to using marijuana one month before the interview, but stated that he was trying to stop using it so that he would be allowed to see his daughter. (*Id.*, PageID 629.)

Plaintiff reported that he has had two jobs in his life and he was terminated from both of them because he had altercations with other people. (Doc. 10-7, PageID 629.) Specifically, he "went off on someone" while working at AutoZone, and he "had words" with his manager at Home Depot. He stated that while he was working, he had problems understanding directions, focusing on tasks, and getting along with his co-workers. (*Id.*)

Plaintiff repeatedly stated that he had shot people, been shot, and had served time in jail. (Doc. 10-7, PageID 629.) He reported that he was confined in a "lock-down hospital" after shooting people. (*Id.*) His ex-girlfriend stated that Plaintiff had assaulted a police officer and that there was domestic violence involving his mother. (*Id.*)

Plaintiff currently lives in the basement of his ex-girlfriend's mother's house. (Doc. 10-7, PageID 630.) He stated that he has never lived independently and has no means of financial support. (*Id.*) He attends to his own hygiene but does not drive,

8

perform household chores, prepare meals, or shop for groceries. (*Id*.) His ex-girlfriend helps him to remember to take his medications and to attend appointments. (*Id*.) He reported having no friends or support other than his ex-girlfriend and her mother. (*Id*.)

Dr. Feria stated that Plaintiff "was mildly cooperative and rapport was difficult to establish due to his suspiciousness and guardedness." (Doc. 10-7, PageID 630.) He had low energy and moved slowly. (*Id*.) He spoke slowly and in a monotone. (*Id*. at PageID 631.) He "appeared to be anxious, irritable, and suspicious. He had blunted affect and was noticeably anxious as his hands trembled and he was sweating." (*Id*.) He asked several times how much longer the interview would take. (*Id*.) He became mildly uncooperative at times and refused to answer questions. (*Id*.)

Dr. Feria assessed Plaintiff's cognitive functioning and estimated that he had below-average intelligence. (Doc. 10-7, PageID 631.) She found that Plaintiff "had difficulties on tasks involving working memory, attention, and speed of processing." (*Id*. at PageID 633.) Dr. Feria found that Plaintiff's "remote recall and short-term memory skills were poor, as well as his attention and concentration skills." (*Id*. at PageID 632.) She stated that he should not manage his own funds. (*Id*. at PageID 632.)

Dr. Feria found that Plaintiff had poor insight, below-average adaptive function, inadequate task persistence, and insufficient judgment to live independently or make decisions about his future. (*Id*. at PageID 631, 633.) She found that Plaintiff's "ability to understand, remember … carry out instructions … perform simple tasks and … perform multi-step tasks appears poor." (*Id*. at PageID 633.)

Dr. Feria opined that Plaintiff would have difficulty "understanding or responding to supervisor feedback and adequately relating to co-workers." (Doc. 10-7, PageID 634.) She explained that his past work history, irritability and anxiety all suggested that he may become unstable "when presented with critical supervisor feedback." (*Id.*) She opined that Plaintiff's "ability to respond appropriately to supervision and to coworkers in a work setting does not appear to be intact." (*Id.*)

Dr. Feria also opined that Plaintiff's abilities to respond appropriately to work pressures in a work setting "does not appear to be intact." (Doc. 10-7, PageID 634.) She explained that Plaintiff had "a history of emotional deterioration in response to work pressure, which led to terminations." (*Id.*) She stated that his Schizophrenia symptoms "certainly compromise his ability to respond to work pressures and lead to increased likelihood of agitation, paranoia and guardedness." (*Id.*) She also noted Plaintiff's statements that he has previously shot people and cannot be around other people. (*Id.*)

The ALJ concluded that Dr. Feria's opinion was unpersuasive:

Consultative examiner, Lauren J. Feria, Psy.D. evaluated the claimant on July 16, 2018 (17F). This consultant opined the claimant's ability to understand, remember and carry out instructions appeared to be poor; his ability to perform simple tasks and perform multi-step tasks appeared to be poor; his ability to respond appropriately to supervision and coworkers in a work setting did not appear intact; and his ability to respond appropriately to work pressures did not appear to be intact (17F). She further opined the claimant appeared to fall below average in intelligence. (17F). This opinion is not consistent with the record as a whole. This consultant did not have the benefit of reviewing the entire record, as evidence was submitted after her opinion was given. While her opinion is consistent with the claimant presentation at this examination, it is not consistent with the totality of the evidence. The claimant wore sunglasses and a hooded jacket, refusing to answer some questions, while making statement such as the government is trying to sell organs (17F). However, despite the claimant's complaints he

10

consistently presented as well groomed, with logical thought processes, normal insight, good judgment, normal cognition, no signs of hyperactive or attentional difficulties, fully oriented, cooperative with good eye contact, no behavioral abnormalities and estimated to have above average intelligence (8F, 16F, 22F). Therefore, this opinion is unpersuasive.

(Doc. 10-2 at PageID 65.)

## V.    LAW AND ANALYSIS

Plaintiff contends that the ALJ erred in her analysis of the opinions of treating psychiatrist Dr. Ramakrishna Gollamudi, M.D. and consultative psychologist Dr. Lauren Feria, Psy.D. (Doc. 13, PageID 797-99.) The Court agrees that the ALJ erred in her analysis of both opinions, and therefore reverses.

### A.    Applicable Law

Social Security regulations require ALJs to adhere to certain standards when evaluating medical opinions. Because Plaintiff filed her claim in February 2019, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 416.920c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c).

11

Significantly, because the first two factors–supportability and consistency–are the "most important" ones, the ALJ "*will* explain" how he or she considered them. 20 C.F.R. § 416.920c(b)(2) (emphasis added).[2] As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2).

## B.    Harmless Error

Courts generally will excuse an ALJ's procedural violation as harmless error unless it prejudices the claimant on the merits or deprives him of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2007) (citing *Connor v. U.S. Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)). A court's ability to excuse a procedural error depends, however, upon the nature of the regulation and the importance of its procedural safeguard. *Id.* For example, an ALJ's failure to comply with the treating physician rule will rarely be excused. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). Such an error may only be excused as harmless if the medical opinion "is so patently deficient that the Commissioner could not possibly credit it," if the violation is

---

[2] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 416.920c(b)(2).

irrelevant because the Commissioner "adopts the opinion … or makes findings consistent with [it]," or if the goal of the procedural safeguard is otherwise met. *Id*. at 547.

The Sixth Circuit has not addressed the circumstances under which an ALJ's failure to explain his consideration of the supportability and consistency factors, as required by 20 C.F.R. § 416.920c(b)(2), can be excused as harmless error. However, several district courts in the Sixth Circuit have held that the harmless error test articulated in *Wilson*, which applies to violations of the treating physician rule, should apply to violations of Section 404.1520c(b)(2), which is virtually identical to Section 416.920c(b)(2). *See Musolff v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 88910, *39 (N.D. Ohio Apr. 27, 2022) (citing cases). This Court agrees that the harmless error test articulated in *Wilson* should apply to violations of 20 C.F.R. § 416.920c(b)(2).

The mandatory articulation requirement in Section 416.920c(b)(2) is similar to the "good reasons" requirement of the treating physician rule. Under that rule, an ALJ who declines to give controlling weight to the opinion of a treating physician must articulate "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record." SSR 96-2p, 1996 WL 374188, *5 (1996). The ALJ's stated reasons "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. The purposes of the good reasons requirement are twofold: to permit meaningful judicial review of the ALJ's application of the treating physician rule, and to ensure that claimants understand why the ALJ disagreed with the opinion of their own physician, who considered them disabled. *Wilson*, 378 F.3d at 544-45.

13

The regulation at issue here is part of the regulatory framework that replaced the treating physician rule and its concomitant good reasons requirement. Under the new framework, ALJs do not give controlling weight to a treating physician's opinion. Instead, ALJs must evaluate the persuasiveness of each medical opinion by using a five-factor test. 20 C.F.R. § 416.920c(c). ALJs are not required to explain their consideration of all five factors. 20 C.F.R. §§ 416.920c(b)(2). They are, however, required to explain their evaluation of the supportability and consistency factors. *Id*. The regulation therefore imposes a burden of explanation, or mandatory articulation, upon ALJs.

The mandatory articulation requirement in Section 416.920c(b)(2) serves the same purposes as the good reasons requirement of the treating physician rule. By requiring ALJs to articulate their analysis of the most important factors to consider when determining the persuasiveness of medical opinions (i.e., supportability and consistency), the requirement permits meaningful judicial review. It also ensures that claimants will receive an explanation of why the ALJ found each medical opinion, including those of their treating physician, to be persuasive, partially persuasive, or not persuasive.

In sum, the function and purposes of the mandatory articulation rule in Section 416.920c(b)(2) are similar to those of the good reasons requirement at issue in *Wilson*. Therefore, the *Wilson* harmless error test should also apply to procedural violations of Section 416.920c(b)(2).

This conclusion is consistent with Sixth Circuit's analysis in *Rabbers*. In that case, the Sixth Circuit reasoned that the *Wilson* test should not extend to a regulation that is a mere "adjudicatory tool" designed to aid the SSA. *Rabbers*, 582 F.3d at 656. Here, the

14

mandatory articulation requirement is not an adjudicatory tool. Instead, it imposes a burden of explanation that serves an "independent and important function" by enabling judicial review and allowing claimants to understand the reasons for the decision. *Id*. The Commissioner's use of mandatory language (the ALJ "***will*** explain") confirms the importance of this procedural safeguard. 20 C.F.R. § 416.920c(b)(2) (emphasis added).

The relative ease or difficulty of conducting a harmless error analysis is also a relevant factor to consider. *Rabbers*, 582 F.3d at 657. An ALJ's failure to comply with Section 416.920c(b)(2) will make it difficult for a court to determine whether the error is harmless. *See, e.g., Terhune v. Kijakazi*, Case No. 3:21-cv-37, 2022 U.S. Dist. LEXIS 130309, *14-15 (E.D. Ky. July 22, 2022). This difficulty provides another reason for concluding that the *Wilson* test should apply to violations of Section 416.920c(b)(2).

For these reasons, this Court concludes that the *Wilson* harmless error test applies to violations of 20 C.F.R. § 416.920c(b)(2). Accordingly, an ALJ's failure to explain his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion can only be excused as harmless error if: (1) the medical opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with the opinion, or (3) the goal of the regulation was otherwise met. *Wilson*, 378 F.3d at 547. Such an error cannot be excused as harmless for other reasons, including where substantial evidence in the record may support the ALJ's conclusion regarding the persuasiveness (or lack thereof) of the medical opinion. *Id*. at 546.

### C.     The ALJ Reversibly Erred When Analyzing Dr. Gollamudi's Opinions

The Court concludes that the ALJ erred in her analysis of Dr. Gollamudi's opinions and that the errors cannot be excused as harmless. Therefore, the Court reverses the ALJ's decision.

#### 1.     *The ALJ erred by failing to explain her analysis of the consistency factor as required by 20 C.F.R. § 416.920c(b)(2) and the error was not harmless.*

The ALJ was required to explain her analysis of the supportability and consistency factors when considering the persuasiveness of Dr. Gollamudi's opinion. 20 C.F.R. § 416.920c(b)(2). However, the ALJ appeared to conflate these requirements and did not address the consistency factor. The Court therefore concludes that the ALJ violated Section 416.920c(b)(2).

 The ALJ concluded that Dr. Gollamudi's opinion was "not consistent with or supported by the objective evidence." (Doc. 10-2, PageID 64.) While this phrase suggests that the ALJ addressed both the supportability and the consistency factors in her explanation, she did not do so. Supportability requires the ALJ to examine "objective medical evidence and supporting explanations presented by a medical source … to support his or her medical opinion(s)." 20 C.F.R. § 416.920c(c)(1). Consistency requires the ALJ to consider "the evidence from other medical sources and nonmedical sources." 20 C.F.R. § 416.920c(c)(2). Here, because the ALJ only considered Dr. Gollamudi's treatment notes (Doc. 10-2, PageID 64), she only addressed the supportability factor. The ALJ's failure to explain her consideration of the consistency factor was an error.

16

Next, the Court considers whether the ALJ's error can be excused as harmless. The Court finds that Dr. Gollamudi's opinions were not patently deficient and, further, that the ALJ did not adopt his opinions or make findings consistent with them. *Wilson*, 378 F.3d at 547. The remaining question is whether the goals of Section 416.920c(b)(2) were met by the ALJ's decision. *Id*. In other words, the Court must determine whether the ALJ's explanation is sufficient to permit meaningful judicial review and to enable the Plaintiff to understand why the ALJ concluded that Dr. Gollamudi's opinions were not persuasive.

The Court concludes that the ALJ's decision does not meet the goals of Section 416.920c(b)(2). The ALJ did not consider whether Dr. Gollamudi's opinions were consistent with evidence from other medical sources and nonmedical sources. This error precludes meaningful judicial review and prevents Plaintiff from understanding why other information consistent with Dr. Gollamudi's opinions did not lead the ALJ to find those opinions persuasive.

Accordingly, the Court concludes that the ALJ's error in failing to comply with the mandatory articulation requirement in 20 C.F.R. § 416.920c(b)(2) cannot be excused as harmless. The Commissioner's decision must therefore be reversed. *Cf. Andrew M. v. Comm'r of Soc. Sec.*, Case No. 1:20-cv-906, 2022 U.S. Dist. LEXIS 40323, *17-18 (S.D. Ohio Mar. 8, 2022) (Bowman, M.J.) (failure to comply with the mandatory articulation requirement in Section 404.1520c(b)(2) was not harmless where evidence in the record could have supported the rejected medical opinions); *Miles v. Comm'r of Soc. Sec.*, Case No. 3:20-cv-410, 2021 U.S. Dist. LEXIS 202840, *12 (S.D. Ohio Oct. 21, 2021) (Silvain,

17

M.J.) (violation of the mandatory requirement in Section 404.1520c(b)(2) required reversal and "the Commissioner's *post hoc* rationalization of how [the] ALJ could have applied the factors … does not cure this deficiency").

### 2. *The ALJ's findings regarding the supportability of Dr. Gollamudi's opinions are not supported by substantial evidence.*

The ALJ also erred because her factual findings regarding the supportability of Dr. Gollamudi's opinions are not supported by substantial evidence.

The ALJ found Dr. Gollamudi's opinions to be unsupported because: "Dr. Gollamudi failed to provide any context or reference to treatment notes to support any of these statements." (Doc. 10-2, PageID 64.) Yet this explanation ignores the "signs and symptoms" section of the form, where Dr. Gollamudi indicated that Plaintiff had poor memory, sleep disturbance, mood disturbances, emotional lability, delusions or hallucinations, substance dependence, psychomotor agitation or retardation, paranoia, difficulty thinking or concentrating, social withdrawal or isolation, and manic syndrome. (Doc. 10-8, PageID 676.) Thus, Dr. Gollamudi did provide support for his opinions.

The ALJ further found that Dr. Gollamudi's opinions "are not supported by Dr. Gollamudi's own treatment notes." (Doc. 10-2, PageID 64.) In support of this conclusion, the ALJ cited a few mental status examinations and highlighted only the normal findings that Dr. Gollamudi documented. (Doc. 10-2, PageID 64.) However, the ALJ ignored Dr. Gollamudi's consistent documentation of an anxious, depressed, and/or irritable and angry mood. (Doc. 10-7, PageID 528, 529, 531, 533, 611; Doc. 10-8, PageID 681, 685, 689.) The ALJ also ignored Dr. Gollamudi's statement that Plaintiff was "positive for

18

depression, anxiety/panic attacks and hallucinations – auditory." (Doc. 10-7, PageID 529, 531.) Given these clinical observations, the ALJ's finding that Dr. Gollamudi's opinions are unsupported by his treatment notes is not supported by substantial evidence.

Defendant argues that the ALJ acknowledged these abnormal findings in her discussion of the medical evidence. But the ALJ did not acknowledge or address these abnormal findings in that discussion. Instead, the ALJ discussed Plaintiff's subjective complaints and made only a few, generalized references to objective findings. (Doc. 10-2, PageID 59.) The ALJ ignored Dr. Gollamudi's consistent findings of anxious, depressed, and/or irritable moods when she found that "the objective evidence in the record showed [Plaintiff] to have . . . normal mood and affect." (Doc. 10-2, PageID 59.)

The Court concludes that the ALJ's finding that Dr. Gollamudi's opinions are not supported by his treatment notes is not supported by substantial evidence. The Court recognizes that the ALJ is not required to directly address each and every piece of evidence and finding in the record. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). Nevertheless, the ALJ's "factual findings as a whole must show that [she] implicitly resolved" the conflicts in the evidence. *Id.* Here, because the ALJ ignored Dr. Gollamudi's explanation on the assessment form and failed to acknowledge the abnormal findings that Dr. Gollamudi documented, the ALJ did not demonstrate that she resolved the evidentiary conflicts. Instead, the ALJ's analysis demonstrates only a selective review of the record. *See Gentry*, 741 F.3d at 723-23 (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir.2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis);

19

*Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir.2008) (finding error where the ALJ was "selective in parsing the various medical reports")). Accordingly, the ALJ's evaluation of Dr. Gollamudi's opinion is unsupported by substantial evidence. This error is not harmless and instead requires reversal.

**D.    The ALJ Reversibly Erred When Analyzing Dr. Feria's Opinions**

The Court concludes that the ALJ's analysis of Dr. Feria's opinions is not supported by substantial evidence and that the error cannot be excused as harmless. Therefore, the Court reverses the ALJ's decision.

Dr. Feria conducted a comprehensive clinical examination of the Plaintiff and included detailed observations and findings in her report. The ALJ ignored almost all this evidence when she analyzed the persuasiveness of Dr. Feria's opinions, acknowledging only that "[t]he claimant wore sunglasses and a hooded jacket, refusing to answer some questions, while making statements such as the government is trying to sell organs." (Doc. 10-2 at PageID 65.)

The ALJ found that Dr. Feria's opinions were "consistent with the claimant['s] presentation at this examination" (Doc. 10-2 at PageID 65), which the Court will construe as a finding that Dr. Feria's opinions are supportable. However, the ALJ found that Dr. Feria's opinions are unpersuasive because: (1) they are "not consistent with the record as a whole" or with "the totality of the evidence," (2) Dr. Feria "did not have the benefit of reviewing the entire record, as evidence was submitted after her opinion was given," and (3) Dr. Gollamudi's treatment notes contain normal mental status examination findings. (Doc. 10-2, PageID 65.)

These factual findings are not supported by substantial evidence. The ALJ ignored the abnormal findings in Dr. Gollamudi's treatment notes, including anger, depression, irritability, anxiety, auditory hallucinations and paranoia. These abnormal findings documented by Dr. Gollamudi are wholly consistent with Dr. Feria's clinical examination and report. Further, although the ALJ did not identify what evidence was submitted after Dr. Feria's examination, it is worth noting that Dr. Feria *did* review Dr. Gollamudi's treatment notes. (Doc. 10-7 at PageID 627-628 (stating that Dr. Feria reviewed "[b]ackground materials provided by DDD, including 2017 records from Access Ohio")). Finally, aside from the supposedly normal findings in Dr. Gollamudi's treatment notes, the ALJ did not identify what other evidence in the record was inconsistent with Dr. Feria's clinical findings.

The Court concludes that the ALJ's finding that Dr. Feria's opinions are not consistent with other evidence in the record is not supported by substantial evidence. Instead, the ALJ's analysis demonstrates an impermissibly selective review of the record. *See Gentry*, 741 F.3d at 723-23; *Germany–Johnson*, 313 F. App'x at 777. Accordingly, the Court concludes that the ALJ's evaluation of Dr. Gollamudi's opinion is unsupported by substantial evidence. This error is not harmless and requires reversal.

## VI.    CONCLUSION

Under Sentence Four of 42 U.S.C. § 405(g), the Court is authorized to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate

award of benefits. *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

The Court finds that a judicial award of benefits is unwarranted in the present case. Instead, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for SSI should be granted.

**IT IS THEREFORE ORDERED THAT**:

1.    Plaintiff's Statement of Errors (Doc. 13) is GRANTED;

2.    The Court REVERSES the Commissioner's non-disability determination;

3.    No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.    This matter is REMANDED to the Social Security under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.    This case is terminated on the Court's docket.

> */s/ Caroline H. Gentry*
> Caroline H. Gentry
> United States Magistrate Judge